UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEA ANN L., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-01534-GCS |
| | ) |
| COMMSSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Income ("SSI") pursuant to 42 U.S.C. § 423.

### PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI under Titles II and XVI of the Social Security Act on July 1, 2010. (Tr. 224). She initially alleged that she became disabled on January 1, 2007. (Tr. 190); (Tr. 192); (Tr. 216); (Tr.223); (Tr. 1824). Plaintiff's case proceeded to a hearing before Administrative Law Judge ("ALJ") James E. Craig, who issued an unfavorable decision on July 19, 2012. (Tr. 76-93). The Appeals Council ("AC") remanded the claim on September 16, 2013. (Tr. 94-98). ALJ Craig issued another unfavorable decision on June 23, 2014. (Tr. 681-702).

Plaintiff's claim then proceeded to the District Court. The Commissioner moved for remand on June 14, 2016, pursuant to 405(g). (Tr. 731). The District Court remanded

the claim for rehearing by an order issued on July 20, 2016. (Tr. 736-739); (Tr. 733-735). In the interim, Plaintiff filed an application for SSI benefits on August 27, 2015. (Tr. 759). The AC consolidated Plaintiff's new application with her application from 2010. (Tr. 745). ALJ Matthias Onderak issued an unfavorable decision regarding these claims on September 12, 2017. (Tr. 571-614); (Tr. 1980-2023). The claims proceeded to the District Court once again, and the parties jointly moved for remand, which was granted by court order on August 6, 2018. (Tr. 2033); (Tr. 2034-2035). Thereafter, the AC issued a remand order with specific directives to the ALJ upon rehearing. Following remand, an unfavorable decision was issued by ALJ Onderak on July 1, 2019. (Tr. 1821-1869). The claim proceeded to the District Court for the third time pursuant to 20 C.F.R. § 404.984.

On October 28, 2020, Magistrate Judge Mark Beatty issued an order for remand on the basis that ALJ Onderak's decision contained "significant errors." (Tr. 2628). Specifically, Judge Beatty found that the ALJ had erroneously weighed the opinions of APRN Karaffa and Dr. Kalb. *Id.* The AC adopted the Court's order and following remand, a hearing was held on February 22, 2021, at which time Plaintiff amended her onset date to January 1, 2010. (Tr. 2598-2599). A partially favorable decision was issued by ALJ Scurry on March 31, 2021. (Tr. 2542-2590). ALJ Scurry found that Plaintiff's disability began on July 9, 2015. *Id.* Once again, the claim proceeded to the District Court pursuant to 20 C.F.R. § 404.984.

On June 22, 2022, upon the Commissioner's motion, District Judge David Dugan reversed and remanded the decision of the Commissioner. (Tr. 3074–3075). In the Commissioner's Motion to Remand, the Commissioner argued that the decision, which

resulted in a finding that Plaintiff was not disabled prior to July 9, 2015, did not consider the opinion of Elizabeth Kalb, PhD., as to Plaintiff's work-related functional limitations. (Tr. 3074). Therefore, the Commissioner argued that the decision left open a question of fact only the ALJ could resolve. *Id.* Plaintiff agreed that the case should be remanded for rehearing and that a direct award of benefits would not be appropriate. *Id.* The AC adopted the Court's order and issued a Remand Order on August 10, 2022, pertaining to Plaintiff's disabled status for the period prior to July 9, 2015. (Tr. 3085-3091). A hearing was held on January 10, 2023, following which the ALJ issued an unfavorable decision on January 25, 2023. (Tr. 3031-3057). Pursuant to 20 C.F.R § 404.984(d), the ALJ's decision became final on March 27, 2023. Plaintiff then filed the present action on May 5, 2023. (Doc. 1).

## ISSUES RAISED BY PLAINTIFF

I.   The ALJ erred in his analysis of the medical opinions and medical evidence contained within the record.

## APPLICABLE LEGAL STANDARDS

To qualify for DIB and SSI, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five

questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his or her former occupation? and (5) Is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

The scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken

into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). While judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analysis detailed above. He determined that Plaintiff had not worked at a level of substantial gainful activity since January 1, 2010, the amended alleged onset date, to July 9, 2015. (Tr. 3039). The ALJ found that Plaintiff had the following severe impairments: schizoaffective disorder; dysthymic disorder; panic disorder with agoraphobia; and alcohol dependence. *Id.* The ALJ also determined that beginning on January 1, 2012, Plaintiff no longer had the severe impairment of alcohol dependence.[1] (Tr. 3040). Additionally, the ALJ found that beginning on or about August 27, 2015, the Plaintiff had the added severe impairments of hepatitis C; chronic obstructive pulmonary disease ("COPD"); and hypertension. *Id.* Lastly, beginning on or about February 11, 2019, the ALJ found that Plaintiff had the severe impairment of diabetes mellitus. *Id.*

In determining Plaintiff's residual functional capacity ("RFC"), the ALJ found that

---

[1] Following January 1, 2012, when the Plaintiff stopped substance use, the remaining severe impairments were found to have caused more than minimal impact on the claimant's ability to perform basic work activities. Therefore, the Plaintiff continued to have a severe impairment or combination of severe impairments. Plaintiff's severe physical impairments, which began on or around May 7, 2013, were also found to have caused more than a minimum impact on Plaintiff's ability to perform basic work activities. (Tr. 3040).

Plaintiff could:

> . . . perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she needed to avoid concentrated exposure to extreme cold, heat, and humidity. She needed to avoid even moderate exposure to extreme amounts of fumes, odors, dust, gases, and areas of poor ventilation. In other words, she needed to work in environments with levels of respiratory irritants similar to those found in business offices, retail establishments, public areas such as a post office or library, or a clean industrial setting. She needed to avoid exposure to unprotected heights and avoid operating dangerous or hazardous moving machinery and equipment. In addition, she could learn and engage in rote tasks that required the exercise of little independent judgment or decision-making and could be learned from a short demonstration within 30 days. She needed to work in a stable setting with minimal change in terms of the tools used, the processes employed, or the setting itself, and change, where necessary, is introduced gradually. The individual needed to refrain from work in an environment that is stringently production or quota-based and she could not perform fast-paced, assembly line type of work. She could meet production requirements that allowed her to sustain a flexible and goal-oriented pace. She could not engage in work-related interaction with the general public. She could not work jobs that require close coordination with coworkers. She could have only occasional task-focused interaction with her coworkers. The individual could tolerate task-focused interaction with her supervisor. She could be given direction and could be re-directed when necessary. However, she was not able to work a job that requires constant oversight and interaction with her supervisor.

(Tr. 3040-3041). As such, the ALJ denied Plaintiff at step five and determined that she would have been able to perform the requirements of representative occupations, like warehouse worker, Dictionary of Occupational Titles ("DOT") number 922.687-058, of which there are about 170,000 positions in the national labor market; a cleaner in a healthcare setting, DOT number 323.687-010, of which there are about 440,000 positions in the national labor market; and a laundry worker, DOT number 361.685-018, of which there are about 39,000 positions in the national labor market. (Tr. 1881, 3042).

In the decision, ALJ Scurry incorporated his partially favorable decision on

Plaintiff's claim from March 31, 2021. (Tr. 3039-3041). The jurisdiction and procedural section of ALJ Scurry's opinion is the only place where he conducts a fresh analysis of Plaintiff's medical records – focusing on those from Dr. Elizabeth Kalb, PhD. and Melissa Karaffa, APRN. (Tr. 3035-3037). ALJ Scurry believed that both Kalb's assessment of Plaintiff's medical records as well as Karaffa's mental functional capacity report supported an onset date of July 9, 2015, with limitations of 2-3 absences per month. (Tr. 3036).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

*A.*     *Evidentiary Hearing*

During the Oral Hearing held on January 10, 2023, Plaintiff rested on the testimony from her previous hearings before an ALJ. (Tr. 3066). Plaintiff's counsel noted that this was Plaintiff's fifth hearing before an ALJ, and expressed his belief that nothing further would be gained from additional testimony from Plaintiff. (Tr. 3065). The ALJ inquired if Plaintiff's Counsel had any further questions for Plaintiff, counsel indicated that he did not, and the ALJ concluded the hearing. (Tr. 3066–3067).

*B.*     *Mental Functional Capacity Report Submitted by Melissa Karaffa, APRN*

Melissa Karaffa, APRN, submitted a Mental Functional Capacity Report on behalf of Plaintiff on July 14, 2016. (Tr. 1643-1646). Karaffa reported that she last examined Plaintiff on April 29, 2016. (Tr. 1644). She listed Plaintiff's impairment/diagnosis as

follows: "schizoaffective disorder, depressed type. episodic alcohol use. stimulant use disorder in remission. She has heard voices since 2000. The voices are disturbing and 'riot' in her head. She is paranoid and cannot go into public places without significant anxiety. Depressed include[s] low mood, crying, sleep disturbance, passive suicidal thoughts, variable appetite, and isolative behavior." (Tr. 1644).

Considering these mental impairments, Karaffa found that Plaintiff had no functional limitations completing activities of daily living. (Tr. 1644). However, Karaffa found that Plaintiff had marked limitations in social functioning. *Id.* With respect to Plaintiff's ability to maintain concentration, persistence, or pace, Karaffa believed that Plaintiff only experienced moderate limitations[2] five or more days per month. (Tr. 1644-1645). When recounting Plaintiff's episodes of decompensation in the last twelve months, Karaffa recounted one to two episodes. (Tr. 1645). She believed that these indicated that Plaintiff needed to increase treatment and be in less stressful situations. *Id.* Karaffa identified from her treatment records that Plaintiff's dates of decompensation during the past year, had occurred on July 9, 2015, August 12, 2015, and November 9, 2015. (Tr. 1646).

Karaffa anticipated that Plaintiff's impairments or treatment would require her to be absent from work two to three times per month. (Tr. 1646). She also expressed her belief that Plaintiff's use of alcohol or substance abuse was due, at least in part, to her

---

[2] "A moderate limitation with respect to concentration, persistence, or pace is demonstrated when an individual is, in aggregate, off task 10%-20% of the workday during periods they are supposed to be on task." (Tr. 1645). In contrast, "a marked limitation with respect to concentration, persistence, or pace is demonstrated when an individual cannot complete tasks without extra supervision or assistance or in accordance with quality and accuracy standards or at a consistent pace without an unreasonable number and length of rest periods (20% of the workday or greater) or without undue interruptions or distractions." (Tr. 1645).

mental impairments. *Id.* However, Karaffa noted that she would not change her assessments regarding Plaintiff's activities of daily living, social functioning, and concentration, persistence, or pace, if Plaintiff ceased using alcohol or other substances. *Id.* Karaffa concluded her report by noting that she had commenced treating Plaintiff sometime in 2000 and that her condition was "chronic." *Id.*

C.      *Medical Interrogatory-Mental Impairments by Elizabeth Kalb, PhD.*

On October 2, 2018, ALJ Onderak requested Dr. Kalb's professional opinion in connection with Plaintiff's claim for Social Security disability. (Tr. 2221). Dr. Kalb completed the enclosed assessment on October 10, 2018. (Tr. 2233-2244). She was asked to review the evidence considering Plaintiff's proposed onset date of January 1, 2007. (Tr. 2233).

Ultimately, Kalb reasoned that Plaintiff's mental disorders did not meet the criteria for any of the listing of impairments provided for by the social security administration. (Tr. 2235). Dr. Kalb found that the evidence within the record established that Plaintiff suffers from "Schizophrenia spectrum and other psychotic disorders/Depressive, bipolar and related disorders: Schizoaffective Disorder, Depressed type."[3] (Tr. 2242). In reaching this determination, Kalb reviewed Plaintiff's medical history – which began in June 2010 when she first presented to an ER reporting auditory hallucinations. *Id.* As such, Kalb felt

---

[3]      However, Dr. Kalb did not find that the medical record evidence supported Plaintiff's diagnosis of generalized anxiety disorder and panic disorder with agoraphobia. (Tr. 2242). She also believed that Plaintiff's depressive symptoms did not meet the diagnostic criteria for major depressive disorder and dysthymic disorder. (Tr. 2243). Rather, Kalb opined that Plaintiff's depressive symptoms and social anxiety fell under and were a product of her schizoaffective disorder. *Id.*

that Plaintiff's medical records only supported an onset date of June 2010 and not January 2007. *Id.* In her analysis of Plaintiff's medical records, Kalb specifically highlighted Plaintiff's treatment from Dr. Spyropoulos (July 2010), Dr. Klug (May 2011 and November 2013), St. Mary's Good Samaritan Behavioral Health Treatment Program (2011 and 2012), and Nurse Karaffa, APRN (2013 through 2017). *Id.* As Plaintiff's schizoaffective disorder was co-morbid with substance abuse, Kalb expressed her opinion that Plaintiff's January 2016 consultative exam would be an adequate assessment of her current functioning. *Id.*

Regarding Plaintiff's functioning, Dr. Kalb found Plaintiff to have moderate impairments in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 2234). Dr. Kalb went on to assess Plaintiff's ability to "do work related activities on a sustained basis." (Tr. 2239-2241). She determined that Plaintiff's ability to understand remember and carry out instructions was impacted by her mental illness. (Tr. 2239). Specifically, she found that Plaintiff's condition caused a mild impairment to her ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple, work-related decisions. *Id.* She also found that Plaintiff had a moderate impairment to her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex, work-related decisions. *Id.* As such, she recommended that Plaintiff be "limited to 1 to 3 step, rote/over learned tasks." *Id.* Dr. Kalb also determined that Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, as well as respond

to changes in the routine work setting, were impacted by her mental illness. (Tr. 2240). She found that Plaintiff's ability to interact appropriately with the public, interact appropriately with a supervisor, interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in a routine work setting were moderately impaired. *Id.*

Lastly, Dr. Kalb recommended that Plaintiff "avoid tasks with speed, pacing or quotas" and noted that she "agreed with 40F (Karaffa's Mental Functioning Capacity Report) that given presentation in treatment with ups and downs while completing that, could be absent 2-3x a month." (Tr. 2240). She also noted, that based on her review of Plaintiff's records that she had determined "within a reasonable degree of medical or psychological probability" that Plaintiff's limitations were first present around June 2010. *Id.*

## DISCUSSION

Plaintiff asserts that the ALJ's determination of her disability onset date is flawed because the ALJ misconstrued Dr. Kalb's medical opinion through his misunderstanding of Melissa Karaffa's 2016 mental functioning report. (Doc. 17, p. 27-28). While Plaintiff does not dispute the ALJ's reliance on Kalb's report, which favorably considered Karaffa's assessment and treatment records, Plaintiff suggests that the ALJ determined Plaintiff's disability onset date with the understanding that Karaffa's mental functioning report reflected her assessment of Plaintiff's entire mental health history. However, Plaintiff points out that the mental health functioning report questionnaire Karaffa responded to only asked her to reflect on Plaintiff's episodes of decompensation for the

past twelve months. Thus, Karaffa only included decompensation dates from 2015 – the first being July 9, 2015 – which is the disability onset date set by ALJ Scurry. Defendant disagrees with Plaintiff's characterization of the ALJ's opinion and believes that Plaintiff only wants the ALJ to reweigh Karaffa's report "more favorably." (Doc. 22, p. 11). Upon review of the record, the Court agrees with Plaintiff that the ALJ misinterpreted Karafa's report, and as this was the basis for the July 9, 2015, disability onset date, the Court must remand the case once again for reconsideration.

In his January 25, 2023, opinion, ALJ Scurry reflected on the medical opinion of Dr. Kalb, by stating the following:

> Dr. Kalb indicated the claimant's documented mental health impairments cause moderate limitations in the ability to understand, remember, and carry out instructions; moderate limitations in interacting appropriately with others; and deficits in the ability to concentrate, persist, and maintain pace as well as in the ability to adapt or manage oneself *resulting in the claimant being absent 2-3 times a month, in agreement with Exhibit 40F. It should be noted that in Exhibit 40F, Melissa Karaffa, APRN, stated that the episodes of decompensation were supported beginning as of July 9, 2015, and that Ms. Karaffa had been treating the claimant prior to July 2013*. Exhibit B22A states that Ms. Karaffa saw the claimant for the first time in November 2012, as supported by Exhibit B23F.

(Tr. 3036) (emphasis added). ALJ Scurry went on to determine that "based on the report of [Plaintiff's] treating nurse Ms. Karaffa, that was relied on and referenced by medical expert Dr. Kalb" that the "record does not support a finding of disabled until July 9, 2015." *Id.* Given this conclusion drawn by ALJ Scurry, it appears that Scurry based Plaintiff's onset of disability date on Karaffa's mental residual functioning capacity report.  However, the plain language of the questionnaire limited Karaffa's reporting to only one year of decompensation episodes; Karaffa was not required to report anything

prior to that point. Furthermore, ALJ Scurry notes that Kalb relied on and referenced Karaffa's report, but Kalb believed the disability onset date was much earlier in June 2010. Thus, the Court is concerned that ALJ Scurry improperly determined Plaintiff's onset of disability date.

Question five of the mental health functioning report submitted by Melissa Karaffa asked Karaffa to report Plaintiff's "episodes of decompensation in the *last twelve months*." (Tr. 1645). (emphasis added). Karaffa reported that Plaintiff had experienced one to two decompensation episodes during this period. *Id.* The form then asked Karaffa to "identify the dates this is supported by your treatment notes" (Tr. 1646). In response, Karaffa listed July 9, 2015, August 12, 2015, and November 9, 2015, as Plaintiff's dates of decompensation. *Id.* However, Karaffa noted that Plaintiff's limitations commenced sometime in the year 2000 and that she had been treating Plaintiff since July 2013. *Id.* She also expressed her belief that Plaintiff's mental health conditions were "chronic." *Id.*

As ALJ Scurry correctly indicated, Dr. Kalb heavily referenced Karaffa's report in her own expert opinion. Kalb reported that Plaintiff's medical records revealed that Plaintiff had been seen for medication management by Ms. Karaffa in 2013 and 2014. (Tr. 2242). Kalb found that Karaffa had diagnosed Plaintiff with "chronic schizoaffective disorder, depressed." *Id.* Kalb's review of Plaintiff's medical records further revealed that Plaintiff continued her mental health treatment with Karaffa from 2014 to 2017, where she carried the diagnosis of "schizoaffective disorder, depressive, episodic alcohol abuse, and stimulant/methamphetamine abuse, in remission." *Id.* Kalb concluded that "[t]aking the MER (medical evidence record) as a whole, [Plaintiff's] reported symptoms best fit

the diagnosis of schizoaffective disorder." *Id.* While Kalb also stated that she agreed with "40F (Karaffa's mental function report)" regarding her absenteeism "2-3x a month", Kalb reported that she believed Plaintiff's limitations began in June 2010. (Tr. 2240). Nowhere did Kalb express an opinion that Plaintiff's onset date began in 2015.

Based on the Court's review of these two pieces of evidence, the Court believes ALJ Scurry's misinterpreted both Kalb's medical expert opinion and Karaffa's mental health functioning report. Thus, the Court remands for reconsideration on the ground that ALJ Scurry did not support his determination of Plaintiff's onset of disability with substantial evidence. As the Court has found that the ALJ committed error regarding the evidence of disability within the record, the Court need not address Plaintiff's remaining arguments. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** for rehearing and consideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

**DATED: September 24, 2024.**

Digitally signed by Judge Sison
Date: 2024.09.24 12:02:53 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**